Pennington, J.
That is a glorious doctrine, Mr. Campbell, for physicians and surgeons. If, when their employers are so poor as to be unable to pay them, they can have recourse to the town, it will aid them wonderfully in collecting their debts.
[*] Campbell. There is such a case in the books.[1] At all events, the court cannot quash the order [638] until the putative father is in court. 6 Mod. 180 ; 1 Blae. Rep. 198.
Kiukpatkick, C. J.
It is evident from the case, that the town was no way burdened by the maintenance of this child; nor were the overseers of the poor applied to for that purpose. The court have no doubt on the subject, but the putative father must be in court before the order is quashed; therefore, let it stand over to the next term, that if he choose, he may appear.
Pennington, T.
The power given to the justices in cases of bastardy, is not for the purposes of settling disputes between the father and mother, respecting the maintenance of the child, or for taking money from the father, and giving it to the mother; but to protect and indemnify the town from its liability to maintain the child. As long as the mother is in good circumstances, and does not apply for relief, or put her child on the town, no order or filiation ought to be made. How far it would be proper to compel the putative father to give seccurity that the child should not become a burden to *438 the town, is another question; I go on the ground that no application has been made for the support of the child.[1] Cause stayed till next term.
Cited in Murphy In re, 3 Zab. 180; State v. Over's of Poor, 4 Zub. 533. Explained in Gaskill v. Dowme, 7 Vr. 356.

 Bul. N. P. 14-7. In this case there was an actual promise made by the overseers.

 The father of the young woman in this case, had recovered a large sum of money of the putative father, for the seduction ; and was above making application for the support of the child. ’